UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **CHARMAINE FRECKLETON,** | : | |
| **16125 Crabbs Branch Way, Apt. 31** | : | |
| **Gaithersburg, MD 20855** | : | |
| | : | |
| *on behalf of herself and others* | : | |
| *similarly situated*, | : | |
| | : | |
| *Plaintiff*, | : | C.A. No. 14-807 |
| v. | : | |
| | : | **CLASS ACTION** |
| **TARGET CORPORATION** | : | |
| 1000 Nicollet Mall | : | |
| Minneapolis, Minnesota 55403 | : | |
| | : | |
| **Serve on:** | : | |
| **The Corporation Trust Incorporated** | : | |
| **351 West Camden Street** | : | |
| **Baltimore, MD 21201,** | : | |
| | : | |
| and | : | |
| | : | |
| **FIRST ADVANTAGE LNS SCREENING** | : | |
| **SOLUTIONS , INC., f/k/a LEXISNEXIS** | : | |
| **SCREENING SOLUTIONS, INC.,** | : | |
| 1 Concourse Parkway NE | : | |
| Sandy Springs, Georgia 30328 | : | |
| | : | |
| **Serve on:** | : | |
| **CSC-Lawyers Incorporating Service** | : | |
| **Company** | : | |
| **7 St. Paul Street** | : | |
| **Suite 1660** | : | |
| **Baltimore, MD 21202,** | : | |
| | : | |
| *Defendants.* | : | |

**CLASS ACTION COMPLAINT**

I. **INTRODUCTION**

1. This is a consumer class action under the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* (FCRA)*,* brought on behalf of applicants for employment with Defendant Target Corporation (Target). Plaintiff contends that Target systematically violates section 1681b(b)(3)

of the FCRA by using a consumer report to make an "adverse" employment decision without, beforehand, providing the person who is the subject of the report a copy of the report and a summary of rights under the FCRA. As a consequence of that violation, job applicants are denied the opportunity to dispute the report *before* the adverse action is taken.

2. The FCRA was enacted "to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy," 15 U.S.C. § 1681(a)(4) (emphasis added), by operating "in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy" of the consumer information they disseminate. 15 U.S.C. § 1681(b). Congress included in the statutory scheme a series of due-process-like protections that impose strict procedural rules on "users" of "consumer reports" such as Target. This action involves Defendant's systematic violation of those important rules.

3. Plaintiff Charmaine Freckleton was denied employment at Target based on a standardized background screen that, pursuant to a contract with Target, a third-party screener conducts on all candidates for hire or promotion. The screener scored Plaintiff "In-Eligible for Hire" based on her presence in a previously active database known as "Esteem" or the "Retail Theft Contributory Database." In violation of the FCRA, Target willfully failed to provide Plaintiff with the mandatory "pre-adverse action notice" and a copy of the damaging theft report used to disqualify her *before* the adverse action occurred, as required by 15 U.S.C. § 1681b(b)(3). Every year, thousands of individuals who have applied to Target for employment have been similarly aggrieved by the same willful violation of 15 U.S.C. § 1681b(b)(3).

4. Plaintiff seeks monetary relief under 15 U.S.C. § 1681n for herself and a class of similarly situated employment applicants to whom Target failed to provide the "pre-adverse action notice" required by 15 U.S.C. § 1681b(b)(3).

5.  Pursuant to 15 U.S.C. § 1681o, Plaintiff also seeks actual damages for herself, plus attorneys' fees, against First Advantage LNS Screening Solutions, Inc., formerly known as LexisNexis Screening Solutions, Inc.  This co-defendant is the consumer reporting agency (CRA) that falsely reported her to Target as a thief, in violation of 15 U.S.C. § 1681e(b), which requires all CRAs to maintain "reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

## II.  PARTIES

6.  Plaintiff Charmaine Freckleton is an adult individual residing in Gaithersburg, Maryland.

7.  Defendant Target is a Minnesota corporation with headquarters and principal place of business located at 1000 Nicollet Mall, Minneapolis, Minnesota 55403.  Target operates over 1,750 discount retail stores in every state except Vermont.

8.  Defendant First Advantage LNS Screening Solutions, Inc. is a corporation with headquarters and principal place of business located at 1 Concourse Parkway NE, Sandy Springs, Georgia 30328. It is a new name of a company formerly known as LexisNexis Screening Solutions, Inc.

9.  During the relevant time period, Target employed LexisNexis Screening Solutions, Inc. to conduct background screens of Target job applicants and to "adjudicate" the eligibility of those applicants based on the results of the screen. It performed those adjudications as an agent of Target.

10.  In early 2013, LexisNexis Screening Solutions, Inc. was acquired by the parent company of First Advantage LNS Screening Solutions, Inc.

11.  Although the members of the class were all adjudicated by LexisNexis or First Advantage on behalf of Defendant Target, Defendant First Advantage LNS Screening Solutions,

Inc., f/k/a LexisNexis Screening Solutions, Inc. is not named as a defendant in the class claim brought against Target (Count I). It is named as a defendant solely in plaintiff's individual claim (Count II). In order not to make any distinction between the period before and after the 2013 acquisition, this defendant will be referred to hereafter as "Screening Solutions."

### III.   JURISDICTION AND VENUE

12.   This Court has jurisdiction over this matter based upon 28 U.S.C. § 1331 and 15 U.S.C. §1681p in that all claims brought arise under the FCRA, 15 U.S.C. § 1681 *et seq*.

13.   Venue is properly in this District, pursuant to 28 U.S.C. § 1391(b), because a substantial part of the events or omissions giving rise to Plaintiff's claim occurred in this District.

### IV.   STATEMENT OF FACTS

14.   Screening Solutions is among the biggest of this nation's employment background screening companies, *i.e.,* those that provide "consumer reports," as defined by 15 U.S.C. § 1681a(d)(1)(B), to prospective employers.

15.   Pursuant to a contract with Target, Screening Solutions has been performing a background review of Target job applicants using the particular elements chosen by Target from Screening Solutions' offered products. Besides choosing the particular product elements to be included in a standard screen, Target also chose the order in which the various elements would be applied, so that a standard screen performed by Screening Solutions would progress automatically through the chosen hierarchy of elements. In this way, a passing score at one stage was programmed to lead to the next stage and a failing score at any stage would result in an end to the screen and a score of "In-Eligible for Hire."

16.   On information and belief, the particular screening protocol selected by Target included, initially, a drug screen and Social Security number validation; then, at the next stage, a search for a match in Screening Solutions' Retail Theft Contributory Database ("Esteem"); and

then, if no Esteem match was found, searches of Screening Solutions' National Criminal Record File and its "OFAC" database.

17. Target used this screening protocol as a filter to weed out applicants scored by Screening Solutions as Ineligible for Hire. Those applicants passing the entire screen were treated by Target as eligible for hire; those failing to pass any element were scored "In-Eligible" and removed from consideration for employment.

18. The particular scoring hierarchy used by Screening Solutions for Target was based on an "adjudication matrix" negotiated between the two companies. With regard to customers using the scoring service, Screening Solutions personnel would adjudicate a job applicant based on this matrix. For example, upon information and belief, the Target matrix provided that an Esteem match, or an Esteem match meeting specified criteria, would trigger a score of "Ineligible for Hire."

19. This "scoring" or "adjudication" service is attractive to Screening Solutions' large-chain customers like Target who are constantly hiring and promoting in very large volumes, providing the customer with a remote, outsourced tool to make its employment decisions rapidly and efficiently.

20. According to Screening Solutions, Esteem was a "Retail Theft Contributory Database" that "helps organizations identify applicants with history of theft or fraud." It was a "membership-based contributory program [which] allows companies to legally share theft and fraud incident information."

21. Screening Solutions suspended use of Esteem sometime during early 2013. While it was operational, however, Esteem was used by many of this nation's large retail chains, both to submit theft reports about terminated employees and as one element of background screens performed on its job applicants.

22. When an Esteem-participating employer "contributed" a new Esteem report to Screening Solutions, this submission consisted of two parts; first, a data transmission composed of several defined fields of information concerning the incident, and second, an electronic copy of a so-called "signed admission statement" regarding the incident. (Screening Solutions referred to this statement as a Verified Admission Statement or "VAS" and that term will be used hereafter.)

23. After receiving a new Esteem report from a customer, Screening Solutions would create an Esteem record in its database for that particular incident. The file maintained for a particular incident would consist of data pertaining to the identity of the consumer subject of the report; data about the specific incident; a classification by type of theft; and, an electronic image of the VAS.

24. While it was operational, Screening Solutions would create new Esteem files with the knowledge that the customer submitting an "admission statement" had likely not provided a copy to the employee and not disclosed to the employee at the time it was procured that the statement was going to be contributed into a nationwide theft database. In fact, Screening Solutions knew that many of its customers preferred keeping the entire Esteem system secret from its employees and made deliberate decisions not to interfere with its customers' discretion in this regard.

25. When, as an element of a background screen, Screening Solutions would perform an Esteem search, and, as a result of that search would find a match between the job applicant and a file in the Esteem database, it would conduct a process called "verification." As part of this process, a clerical employee of Screening Solutions would review the data about the reported theft incident and the image of the VAS.

26. For those customers, like Target, that used Screening Solutions' scoring service to adjudicate the eligibility of the job applicant, a verified Esteem match would also prompt Screening Solutions to score the applicant Ineligible, in accordance with the Target adjudication matrix.

27. In March of 2012, a Maryland Target store selected Plaintiff Freckleton for hire as a Sales Floor Team Member, conditional on her clearing the Screening Solutions background search. Pursuant to its standard hiring practices, Target ordered a background screen of Plaintiff on or about March 23, 2012.

28. Screening Solutions conducted the background screen of Plaintiff on that same day, March 23, 2012.

29. After Screening Solutions determined that Plaintiff was drug-free and validated her Social Security number, it conducted a search of its Esteem database and discovered a match. In accordance with its standard procedures, Screening Solutions conducted a "verification" of the Esteem file, including in this determination a review of a VAS on file pertaining to a theft report contributed to Esteem by CVS about an incident that purportedly occurred in a CVS store in December, 2011.

30. As a result of the "verified" Esteem match, Screening Solutions scored Plaintiff as Ineligible for Hire and provided a written report to Target which included a summary of the December, 2011 incident reported by CVS to Screening Solutions. In accordance with Screening Solutions' standard practice, which is designed to provide background reports to customers within the same 24-hour period they are requested, both the adjudication and the report back to Target occurred on the same day the screening order was received, March 23, 2012.

31. Also in accordance with its standard practice, this rapid response by Screening Solutions to Target occurred prior to any communication with Plaintiff regarding the adverse action that had already happened. Several days after Screening Solutions transmitted the background report to Target, either Target, or Screening Solutions on behalf of Target, provided Plaintiff with a copy of the background report, along with a notice representing that the report *might* have an adverse effect on her application for employment.

32. While Plaintiff did not retain a copy of that mailing from Target or from Screening Solutions on behalf of Target, she recently obtained from Screening Solutions a copy of the consumer report that was included in that mailing. A copy is attached hereto as Exhibit A.

33. With regard to job applicants adjudicated as Ineligible for Hire based on an Esteem match and who were sent untimely pre-adverse action notices by either Target or Screening Solutions on behalf of Target, such notices never included copies of the Esteem VAS that Screening Solutions used to "verify" the Esteem match that was the basis of the "Ineligible" score.

## V. CLASS ACTION ALLEGATIONS

34. Plaintiff brings this action on behalf of a class defined as follows:

All employees or applicants for employment of Defendant Target residing in the United States (including all territories and other political subdivisions of the United States) who were the subject of a background report that scored them "Ineligible for Hire," beginning two years prior to the filing of this action and continuing to the resolution of this action, and for whom Target failed to provide the employee or applicant a copy of their consumer report or a copy of the FCRA summary of rights at least five business days before that determination.

35. **Numerosity. FED. R. CIV. P. 23(a)(1).** The Class members are so numerous that joinder of all is impractical. Upon information and belief, Target conducts tens of thousands of background screens annually, and based on those screening reports, treats thousands of consumers as ineligible for hire. Those persons' names and addresses are identifiable through

documents maintained by Target and/or Screening Solutions.

36. **Common Questions of Law and Fact. FED. R. CIV. P. 23(a)(2).** Common questions of law and fact exist as to all members of the Class, and predominate over the questions affecting only individual members. The common legal and factual questions include, among others:

a) Whether Target failed to provide each employee or applicant for employment a copy of their consumer report at least five business days before it took an adverse action based upon the consumer report;

b) Whether Target failed to provide each employee or applicant for employment a copy of their written notice of FCRA rights at least five business days before it took an adverse action based upon the consumer report;

c) Whether Target acted willfully in disregard of the rights of employees and applicants in its failure to require its employees, automated systems and/or outside vendors to send consumers copies of all consumer reports relied on in classifying employment applicants as Ineligible for Hire, with a written statement of their FCRA rights, before such classification occurred.

37. **Typicality. FED. R. CIV. P. 23(a)(3)**. Plaintiff's claims are typical of the claims of each Class member. Plaintiff has the same claims for statutory and punitive damages that she seeks for absent class members.

38. **Adequacy. FED. R. CIV. P. 23(a)(4).** Plaintiff is an adequate representative of the Class. Her interests are aligned with, and are not antagonistic to, the interests of the members of the Class she seeks to represent, she has retained counsel competent and experienced in such litigation, and she intends to prosecute this action vigorously. Plaintiff and her Counsel will fairly and adequately protect the interests of members of the Class.

39. **Predominance and Superiority. FED. R. CIV. P. 23(b)(3).** Questions of law and fact common to the Class members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. The statutory and punitive damages sought by each member are such that individual prosecution would prove burdensome and expensive given the complex and extensive litigation necessitated by Target's conduct. It would be virtually impossible for the members of the Class individually to redress effectively the wrongs done to them. Even if the members of the Class themselves could afford such individual litigation, it would be an unnecessary burden on the courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the complex legal and factual issues raised by Target's conduct. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in a unified proceeding.

## VI.    CAUSES OF ACTION

### COUNT I
### 15 U.S.C. § 1681b(b)(3)
### (Class Claim, against Target only)

40. Plaintiff realleges and incorporates by reference all preceding allegations.

41. Plaintiff is a "consumer," as defined by the FCRA, 15 U.S.C. § 1681a(c).

42. Screening Solutions background reports are "consumer reports" within the meaning of 15 U.S.C. § 1681a(d).

43. An Esteem VAS is a "consumer report" within the meaning of 15 U.S.C. § 1681a(d), used by Screening Solutions in its capacity as agent for Target, to render adverse employment-related determinations.

44.     Under the FCRA, a "user" of a consumer report who intends to take an "adverse action" on a job application "based in whole or in part" on information obtained from the consumer report must provide notice of that fact to the consumer-applicant, and must include with the notice a copy of the consumer report and a notice of the consumer's dispute rights under the FCRA, *before* taking the adverse action.  15 U.S.C. § 1681b(b)(3)(A).  After an adverse action occurs, the consumer employment applicant must receive a second notice, mandated by 15 U.S.C. §1681m.

45.     The reasons for the "pre-adverse action" requirement with regard to employment situations are to alert the job applicant that she is about to be rejected based on the content of a report, and provide her an opportunity to challenge the accuracy or relevancy of the information with the consumer reporting agency or the user before that job prospect is lost. The FCRA provides that any person "using a consumer report for employment purposes" who intends to take any "adverse action based in whole or in part on the report," must provide the consumer a written description of the consumer's rights under the FCRA, as prescribed by the Federal Trade Commission, *before* taking such adverse action. 15 U.S.C. § 1681b(b)(3)(A).

46.     For purposes of this requirement, an "adverse action" includes "any . . . decision . . . that adversely affects any current or prospective employee," 15 U.S.C. § 1681a(k)(1)(B)(ii), or "an action taken or determination that is . . . (I) made in connection with an application that was made by . . . any consumer, . . . and  (II) adverse to the interests of the consumer." 15 U.S.C. § 1681a(k)(1)(B)(v).

47.     Defendant Target is a "person" that regularly uses background reports for employment purposes.

48.     The FCRA requires Target, as a user of consumer reports for employment purposes, before taking adverse action based in whole or in part on the report, to provide to the

consumer to whom the report relates, a copy of the report and a written description of the consumer's rights under the FCRA.  15 U.S.C. § 1681b(b)(3)(A)(i), (ii).

49. Target willfully violated section 1681b(b)(3) of the FCRA by providing Plaintiff and the members of the Class with the following items after, rather than before, it took adverse actions regarding applications for employment: (a) the required Pre-Adverse Action Notice; (b) a copy of the background report; and, (c) a written description of the consumer's rights under the FCRA.  As a result of this violation of the FCRA, Plaintiff and the Class members were denied the opportunity to review and dispute the report before Target took adverse action on their employment or promotion applications based on those reports.

50. Target also willfully violated section 1681b(b)(3) of the FCRA by *never* providing copies of the VAS to Plaintiff and those Class members whose adverse action was based on an Esteem match.

WHEREFORE, Plaintiff Freckleton and the Class pray for relief as follows:

A. An order certifying the proposed Class under Rule 23 and appointing Plaintiff and the undersigned counsel of record to represent same;

B. An award of statutory and punitive damages for Plaintiff and the Class;

C. An award of pre-judgment and post-judgment interest as provided by law;

D. An award of attorneys' fees and costs; and,

E. Such other relief as the Court deems just and proper.

### COUNT II
### 15 U.S.C. § 1681b(b)(3)
### (Individual Claim, against First Advantage LNS Screening Solutions, Inc. only)

51. Plaintiff realleges and incorporates by reference all preceding allegations.

52. The background report provided by Screening Solutions to Target on or about March 23, 2012 described a theft incident that purportedly occurred in CVS store no. 1490, in

Gaithersburg, Maryland, on December 2, 2011. According to the report, Plaintiff Freckleton purportedly stole $100 worth of merchandise on that date at that store. The report further stated that the basis of this information was a "verified admission statement."

53. This background report was inaccurate in that Plaintiff never stole anything from CVS or from any other employer during her long career working in retail stores. What she recalls about the incident on December 2, 2011, is the following:

    a. On or about that date, during a work shift, she was directed to a back room by a CVS loss prevention agent who then subjected her to a prolonged interrogation about an incident that occurred sometime the previous month while Plaintiff was performing her duties as a cashier. The subject of the interrogation was not a supposed theft of merchandise by her, but rather, her alleged participation in a theft of merchandise by a former employee who, the agent claimed, managed to obtain several items without paying for them.

    b. Plaintiff had some recollection of the incident, wherein the former employee made a large purchase of many items and, then, at the end of the transaction, told Plaintiff that she had coupons she had forgotten to use. In accordance with store procedures, Plaintiff recalls reversing the entire multi-item transaction and scanning everything a second time. As she told the loss prevention agent, if some items were not scanned, that was due to oversight, not any wrongful intent, on Plaintiff's part.

    c. The loss prevention agent conducting the interrogation would not accept Plaintiff's explanation and insisted that she acknowledge culpability for the store's loss. She believes, in recollecting the interrogation, that it lasted for as long as two hours, during which time she remained on the clock, and, therefore, was not free to leave.

    d. The interrogation occurred only days after Plaintiff had learned that her father had died, and she was waiting for a funeral date. The rawness of that loss left Plaintiff

13

particularly vulnerable to the interrogation techniques of the agent, which left her feeling powerless, confused, and fearful.

   e. The agent was persistent and accusatory and convinced her that she had to admit, first, to not scanning specific items among those purchased by the said customer, and second, to giving away undisclosed merchandise to other customers in the past.

   f. The agent instructed her what to write and she wrote and signed the papers as she was instructed. In her mind, she had no choice but to cooperate.

   g. Plaintiff was not given any copies of anything she signed or of any documentation underlying the accusation. She also was not informed of the intended use of the statement procured by the agent. She has no doubt that, had she been informed that the statement would be included in a national theft database and would be reported to other prospective employers, she would have resisted the agent and refused to make the statement.

   h. It was not until September, 2013, with the assistance of counsel, that she was able to obtain from Defendant Screening Solutions a copy of the supposed "Admission Statement" and see the theft to which she purportedly admitted. According to that statement she admitted to giving away a "few hair products" and "a pack cigarettes" to a customer named Janice Walker on November 2, 2011," and that "in dollars" she "gave away" $100 in merchandise.

   i. Plaintiff did not give away any merchandise to the said Janice Walker or any other patron of CVS, and, to the best of her recollection, the $100 figure was simply a number that the agent instructed her to write.

54. Another aspect of the inaccuracy of the background report provided by Screening Solutions to Target was that Screening Solutions did not, as stated, "verify" that the reported theft incident ever occurred. Instead, all that Screening Solutions verified was that the existence

14

of the statement in its database, it having been submitted by CVS to Screening Solutions without any notice to Plaintiff. Had Screening Solutions intended to engage in any meaningful "verification" of the report from CVS, it would have provided a copy to Plaintiff and asked for her side of the story, before reporting her to a prospective employer as a "verified" thief.

55. 15 U.S.C. § 1681e(b) provides that: "Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

56. Screening Solutions negligently failed to follow reasonable procedures to assure maximum possible accuracy of the information in the Esteem database. On the contrary,

    a. The accuracy of a purported admission of theft would depend on the statement actually being a knowing and freely made admission of criminal wrongdoing by the subject. However, there was no Esteem policy or procedure setting any kind of standard for the manner in which Esteem customers obtained a so called "admission statement," nor any requirement of disclosure to the employee making the statement to ensure that the purpose of the statement was understood when made. In fact, Screening Solutions was aware that customers used police-like interrogation techniques to scare or deceive employees into signing "admission statements" and preferred to keep the Esteem database secret from its employees by, among other things, not providing copies of the procured statements to the individual supposedly making the admission.

    b. As a matter of common practice, at the time Screening Solutions accepted new theft reports into the Esteem database from Esteem subscribers, it conducted no verification of the accuracy of the contributed report. Had it been seriously interested in maximizing the accuracy of statements in its Esteem database, it would have alerted the individual who supposedly made the statement about its existence and would have given the individual an

15

opportunity to provide her side of the story, while the incident was fresh and witnesses were still available.

    c.  The only so-called "verification" ever conducted by Screening Solutions would occur at a later time, when an inquiring employer customer (in Plaintiff's case, Target) requested a check of the Esteem database regarding a prospective new hire. This could be months or even years after the incident.

    d.  But even at that time, when the company would supposedly "verify" the theft report, all that Screening Solutions "verified" was the existence of the admission statement in the database, a statement which the contributing customer (CVS) had represented to be an admission by Plaintiff and which, the company would have had reason to believe, had never been shown to Plaintiff.

    e.  Even at the point of "verifying" the existence of the report, which, it had reason to know had never been shown to the individual by the employer that had procured it, Screening Solutions did not itself provide a copy to the individual either, thereby deliberately excluding the individual's side of the story from its so-called verification.

  57.  One of the principal means used by the FCRA to reduce inaccuracies in consumer reports is the dispute procedure established by 15 U.S.C. § 1681i. Among other things, the Pre-Adverse Action Notice that Plaintiff should have received pursuant to 15 U.S.C. § 1681b(b)(3) would have advised her about her right to dispute the accuracy of the report under 15 U.S.C. § 1681i. However, in this case, such a dispute would have been futile because (a) even once a dispute was initiated, Screening Solutions would not provide a copy of the admission statement to the consumer bringing the dispute; and, (b) Screening Solutions would make no effort to conduct an independent investigation of the accuracy of the report but rather, would simply rely

on the judgment of the customer who originally furnished the report as to whether revise or remove the theft report.

58. As a result of Defendant Screening Solutions' violation of 15 U.S.C. § 1681e(b), Plaintiff suffered intense emotional and reputational harm, being branded a thief in a nationwide database available to hundreds of her potential future employers.

WHEREFORE, Plaintiff Freckleton prays for the following relief, pursuant to 15 U.S.C. §§ 1681n or 1681n, as follows:

A. A finding that Screening Solutions negligently violated 15 U.S.C. § 1681e(b) as to Plaintiff Freckleton only;

B. An award of actual damages;

C. Reasonable attorney's fees and costs; and,

D. Such other relief as the Court deems just and proper.

**TRIAL BY JURY IS DEMANDED**.

DATED: March 17, 2014      By:   *s/ Martin E. Wolf*
                                  Martin E. Wolf (Bar No. 09425)
                                  **GORDON, WOLF & CARNEY, CHTD.**
                                  102 W. Pennsylvania Avenue, Suite 402
                                  Towson, MD 21204
                                  410-825-2300

                                  Irv Ackelsberg (*pro hac vice*)
                                  **LANGER GROGAN & DIVER, PC**
                                  1717 Arch Street, Suite 4130
                                  Philadelphia, PA 19103
                                  (215) 320-5660

                                  James A. Francis (*pro hac vice*)
                                  John Soumilas (*pro hac vice*)
                                  David A. Searles (*pro hac vice*)
                                  **FRANCIS & MAILMAN, P.C.**
                                  100 S. Broad Street, 19th Floor
                                  Philadelphia, PA 19110
                                  (215) 735-8600

                                  *Attorneys for Plaintiff and the Class*