IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

CHARMAINE FRECKLETON,  *
on behalf of herself and others  *
similarly situated,
                                 *
    Plaintiffs,
                                 *
    v.                              CIVIL NO.: WDQ-14-0807
                                 *
TARGET CORPORATION,
et al.,                          *

    Defendants.                  *

\* \* \* \* \* \* \* \* \* \* \* \* \*

MEMORANDUM OPINION

Charmaine Freckleton (the "Plaintiff") sued Target Corporation ("Target") and First Advantage LNS Screening Solutions, Inc. ("First Advantage")[1] for violations of the Fair Credit Reporting Act ("FCRA").[2] Pending are Target's and First Advantage's motions to dismiss the original complaint, the Plaintiff's motion to confirm leave to amend the complaint, and Target's motion to strike the amended complaint, or, in the alternative, to dismiss the amended complaint for failure to state a claim. No hearing is necessary. Local Rule 105.6 (D. Md. 2011). For the following reasons, the motion to confirm

---

[1] The Plaintiff alternatively refers to First Advantage LNS Screening Solutions, Inc. as "Screening Solutions" and "First Advantage."

[2] 15 U.S.C. § 1681 et seq.

leave to amend will be granted; the other motions will be denied.

I.  Background[3]

A. Target's Relationship with First Advantage

First Advantage "is among the biggest of this nation's employment background screening companies." ECF No. 45 at ¶ 14. First Advantage "enters into form contracts ("Agreement of Service") with its employer customers, whereby, for a price, [First Advantage] agrees to provide consumer reports for employment purposes within the meaning of section 1681b(b) of the FCRA."[4]  *Id.* at ¶ 15.

First Advantage's customers, through the Agreement of Service, "acknowledge and agree that the information it will provide in connection with a background check is regulated FCRA consumer report information." *Id.*  The customers must also

---

[3] The facts are from the proposed first amended complaint. ECF No. 45. On a motion to dismiss, the well-pled allegations in the complaint are accepted as true. *Brockington v. Boykins*, 637 F.3d 503, 505 (4th Cir. 2011). The Court will consider the pleadings, matters of public record, and documents attached to the motions that are integral to the complaint and whose authenticity is not disputed. *See Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

[4] "In certain rare instances, [First Advantage] will provide certain information to its customers in connection with 'employee investigations' under FCRA section 1681a(y), but [the Plaintiff avers that] such information is not at issue with regard to the Plaintiff or Class members in this action." ECF No. 45 at ¶ 14.

2

agree to "follow FCRA procedures and safeguards that apply to the use of consumer reports." *Id.* For each background check ordered, the client must "have disclosed in writing to the job applicant its intent to procure a 'consumer report' as part of the application and the applicant will have provided the customer with a written consent to such procurement." *Id.* at ¶ 17.

When a client requires a background check, it sends a request to First Advantage. *Id.* at ¶ 19. Using proprietary software, First Advantage will gather information about the prospective employee. *Id.* "For an additional fee, [First Advantage] offers a 'scoring service' which, in addition to providing a 'background report' about the applicant, will score the applicant in accordance with an 'adjudication matrix' negotiated between the two companies." *Id.* at ¶ 20. The adjudication matrix assigns the applicant one of three classifications: in-eligible for hire, eligible, or "'decisional' (meaning that the customer needs to decide itself." *Id.*

Target was one of First Advantage's "employer customers." *Id.* at ¶ 16. In addition to using First Advantage's background checks, Target also contracted to use the scoring service, and specified the factors that would make a candidate "in-eligible

3

for hire" when adjudicated. *Id.* at ¶ 20-23. "Target has used this background screening service by [First Advantage] as a way to manage its vast pool of job applicants, filtering out those applicants scored by [First Advantage] as 'In-Eligible for Hire.'" *Id.* at ¶ 23.

"As part of its agreement with Target, one of the databases [First Advantage] used to adjudicate Target job applicants . . . was its proprietary database known [] as 'Esteem.'" *Id.* at ¶ 25. "The data maintained in the Esteem database consisted primarily of purported admissions of theft procured by a former employer and contributed to the Esteem system. This data is separate from criminal records information, which tends to be contained in separate databases . . . ."[5] *Id.* at ¶ 26. Target specified a "screening protocol" for prospective employees that "included, after a drug test, a Social Security number validation; then, at the next stage, an Esteem search; and then, if no Esteem match[es] were found, searches of [First

---

[5] "Esteem was a membership program previously offered to [First Advantage's] customers in the retail industry. Under this program, [First Advantage] would receive contributed employee 'admission statements' from one member, link those statements to the identifying information (name, address, social security number) for the employee in its massive data system, and then, in the event that same individual were to be the subject of a future background inquiry from a different employer member of Esteem, would report an Esteem 'match' to the inquiring employer." ECF No. 45 at ¶ 27.

4

Advantage's] National Criminal Record File and its 'OFAC' database." *Id.* at ¶¶ 28-29.

B. The Plaintiff's Contacts with the Defendants

In early 2012, the Plaintiff applied for a job at Target. ECF No. 45 at ¶ 31. During the application process, "Target required [the] Plaintiff to consent to the procurement by Target of 'consumer reports' about her." *Id.* "In the consent documents that Target made [the] Plaintiff sign, Target asserted that it would be obtaining an FCRA consumer report." *Id.*

On or about March 23, 2012, Target requested that First Advantage complete a background screening on the Plaintiff.[6] *Id.* at ¶ 32. "[A]fter validating [the] Plaintiff's Social Security number, [First Advantage] conducted a search of the consumer report about [the] Plaintiff in its Esteem database and discovered a match." *Id.* at ¶ 34. First Advantage adjudicated the Plaintiff in-eligible for hire, and reported to Target that she had been involved in a theft on December 2, 2011. *Id.* at ¶¶

---

[6] "At the time that Target ordered and obtained the background screen about [the] Plaintiff from [First Advantage], [the] Plaintiff was not a confirmed employee of Target, and Target had not initiated any investigation of the Plaintiff. Target had no suspicion of any misconduct by [the] Plaintiff relating to employment, and the background screen was not ordered in connection with an investigation." ECF No. 45 at ¶ 33.

34-35, 64.[7] The background check and screening process were completed on March 23, 2012, the day Target sent the initial request. *Id.* at ¶ 42.

"Several days after [First Advantage] transmitted the Background Report [] to Target . . . , provided [the] Plaintiff with a copy of the same background screen report [First Advantage] had earlier furnished to Target, accompanied by a written standardized notice, representing that the report *might* have an adverse effect on her application for employment and a form notice explaining, *inter alia*, her right under the FCRA to dispute the accuracy of the report." *Id.* at ¶ 39.

C. Procedural History

On March 17, 2014, the Plaintiff sued Target on behalf of herself and similarly situated others, alleging that Target had violated 15 U.S.C. § 1681b(b)(3). ECF No. 1. The Plaintiff also asserted an individual claim against First Advantage for violating 15 U.S.C. § 1681e(b). *Id.* On April 30, 2014, Target moved to dismiss for failure to state a claim. ECF No. 28. On May 8, 2014, the Court approved the Plaintiff and Target's joint stipulation giving the Plaintiff until June 19, 2014 to "respond" to the motion to dismiss. ECF Nos. 35-36. On May 23,

---

[7] The Plaintiff contends that "[t]his background report was inaccurate in that [the] Plaintiff never stole anything from CVS or from any other employer during her long career working in retail stores." ECF No. 45 at ¶ 65.

2014, First Advantage moved to dismiss for failure to state a claim. ECF No. 40. On June 6, 2014, the Court approved the parties' joint stipulation giving the Plaintiff until June 27, 2014 to respond to First Advantage's motion to dismiss. ECF Nos. 43-44.

On June 20, 2014, the Plaintiff filed an amended complaint. ECF No. 45. The Plaintiff believed that she was filing the amended complaint as of right under Fed. R. Civ. P. 15(a)(1) because of the extensions of time under the two joint stipulations.[8] See ECF No. 50-1 at 7. "After learning that [the] Defendants were taking the position that the amended complaint had been filed without their consent . . ., and in order to eliminate any question that her First Amended Complaint was properly filed, [the] Plaintiff filed" a motion to confirm leave to amend. ECF No. 46; ECF No. 50-1 at 7.

On July 2, 2014, Target moved to strike the amended complaint, or, alternatively, to dismiss the amended complaint for failure to state a claim. ECF No. 47. On July 10, 2014, Target opposed the Plaintiff's motion to confirm leave to amend. ECF No. 48. On July 14, 2014, First Advantage opposed the

---

[8] The Plaintiff contends that the amended complaint was supposed to be filed on June 19, 2014 within the extension of time for the Target motion, but was filed at 9:30 am on June 20, 2014 because of a "miscommunication between [the] Plaintiff's lawyers." ECF No. 51 at 4.

7

Plaintiff's motion to confirm leave to amend. ECF No. 49. On July 21, 2014, the Plaintiff opposed Target's motion to strike the amended complaint. ECF No. 50. On July 28, 2014, the Plaintiff replied to Target's opposition to her motion to confirm leave to amend. ECF No. 51. On August 7, 2014, Target filed its reply for its motion to strike the amended complaint. ECF No. 55.

II. Analysis

  A. Legal Standards

    1. Amending a Complaint

Fed. R. Civ. P. 15(a)(1) allows a party to "amend its pleading once as a matter of course" within "21 days after serving it" or, "if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." All other amendments may be made "only with the opposing party's written consent or the court's leave." Rule 15(a)(2).

Federal Rule of Civil Procedure 15(a)(2) instructs that leave to amend should be freely given when justice requires. Leave should be denied only when amendment would unduly prejudice the opposing party, amount to futility, or reward the movant's bad faith. *Steinburg v. Chesterfield Cnty. Planning*

8

Comm'n, 527 F.3d 377, 390 (4th Cir. 2008); *Equal Rights Ctr. v. Niles Bolton Associates*, 602 F.3d 597, 603 (4th Cir. 2010).

2. Motion to Dismiss for Failure to state a Claim

Under Fed. R. Civ. P. 12(b)(6), an action may be dismissed for failure to state a claim upon which relief may be granted. Rule 12(b)(6) tests the legal sufficiency of a complaint, but does not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).

The Court bears in mind that Rule 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." *Migdal v. Rowe Price-Fleming Int'l Inc.*, 248 F.3d 321, 325-26 (4th Cir. 2001). Although Rule 8's notice-pleading requirements are "not onerous," the plaintiff must allege facts that support each element of the claim advanced. *Bass v. E.I. Dupont de Nemours & Co.*, 324 F.3d 761, 764-65 (4th Cir. 2003). These facts must be sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This requires that the plaintiff do more than "plead[] facts that are 'merely consistent with a defendant's liability'"; the facts pled must "allow[] the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Twombly*, 550 U.S. at 557). The complaint must not only allege but also "show" that the plaintiff is entitled to relief. *Id.* at 679 (internal quotation marks omitted). "Whe[n] the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* (internal quotation marks and alteration omitted).

B. The Plaintiff's Motion to Confirm Leave to Amend and Target's Motion to Strike

The Defendants argue that the Court should strike the amended complaint because it was filed more than 21 days after Target's motion to dismiss. *See* ECF No. 48 at 5-6; ECF No. 49 at 1-2. The Defendants contend that their stipulations to extend the Plaintiff's time to "respond" to their motions to dismiss did not extend her time to file an amended complaint. *See id.*

The Court need not determine if the stipulations extended the Plaintiff's time to file an amended complaint as a matter of right. Even if the stipulations extended her time, the Plaintiff filed the amended complaint on June 20, 2014, and her stipulation with Target only gave her until June 19, 2014 to respond to the motion. *See* ECF Nos. 35-36.

However, under Federal Rule of Civil Procedure 15(a)(2), leave should be denied only when amendment would unduly prejudice the opposing party, amount to futility, or reward the movant's bad faith. *Steinburg v. Chesterfield Cnty. Planning Comm'n*, 527 F.3d at 390. Here, discovery has yet to begin, and there had been no showing of prejudice or bad faith. Target argues that the amended complaint would be futile. ECF No. 47 at 8. For the reasons discussed below in the denial of Target's motion to dismiss the amended complaint, the amended complaint states a claim and is not futile. Accordingly, the Court will grant the Plaintiff's motion to confirm leave to amend, and will deny Target's motion to strike.

C. The Motions to Dismiss

  1. Target's and First Advantage's Motions to Dismiss the Original Complaint

"It is well settled that an amended pleading supersedes the original pleading, and that motions directed at superseded pleadings are to be denied as moot." *Blount v. Carlson Hotels*, 3:11CV452-MOC-DSC, 2011 WL 6098697, at *1 (W.D.N.C. Dec. 6, 2011) (*citing Young v. City of Mount Ranier*, 238 F.3d 567, 573 (4th Cir. 2001) ("The general rule . . . is that an amended pleading supersedes the original pleading, rendering the original pleading of no effect.")). Accordingly, the Court will

deny Target's and First Advantage's motions to dismiss the original complaint as moot.

2. Target's Motion to Dismiss the Amended Complaint

Target contends that the amended complaint should be dismissed because the background check performed by First Advantage was not a consumer report protected by the FCRA. ECF No. 47 at 13. Target argues that its actions, as described in the amended complaint, are within one of the FCRA's "exclusions." *See id.* at 14-15. The Plaintiff contends that Target violated § 1681b(b)(3) of the FCRA, and that the exclusion cited by Target does not apply. ECF No. 50-1 at 14.

Section 1681b(b)(3) of the FCRA sets conditions for the use of a consumer report in an adverse employment action:

> Except as provided in subparagraph (B), in using a consumer report for employment purposes, before taking any adverse action based in whole or in part on the report, the person intending to take such adverse action shall provide to the consumer to whom the report relates--
>
> (i)  a copy of the report; and
>
> (ii) a description in writing of the rights of the consumer under this subchapter, as prescribed by the Bureau under section 1681g(c)(3) of this title.

The Act defines a consumer report as

> any written, oral, or other communication of any information by a consumer reporting agency bearing on

12

a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for--
(A) credit or insurance to be used primarily for personal, family, or household purposes;

(B) employment purposes; or

(C) any other purpose authorized under section 1681b of this title.

15 U.S.C. § 1681a(d)(1). Further, "[t]he term 'employment purposes' when used in connection with a consumer report means a report used for the purpose of evaluating a consumer for employment, promotion, reassignment or retention as an employee." § 1681a(2)(h).

Target concedes that under these definitions, the Plaintiff's background check was a consumer report protected by the Act. ECF No. 47 at 13-14. However, Target asserts that the background report is within one of the Act's exclusions. *See id.*

Section 1681a(y) of the FCRA creates an "[e]xclusion of certain communications for employee investigations." A communication is described in this subsection if:

(A) but for subsection (d)(2)(D) of this section, the communication would be a consumer report;

(B) the communication is made to an employer in connection with an investigation of--

13

(i) suspected misconduct relating to employment; or

(ii) compliance with Federal, State, or local laws and regulations, the rules of a self-regulatory organization, or any preexisting written policies of the employer;

(C) the communication is not made for the purpose of investigating a consumer's credit worthiness, credit standing, or credit capacity; and

(D) the communication is not provided to any person except--

(i) to the employer or an agent of the employer;

(ii) to any Federal or State officer, agency, or department, or any officer, agency, or department of a unit of general local government;

(iii) to any self-regulatory organization with regulatory authority over the activities of the employer or employee;

(iv) as otherwise required by law; or

(v) pursuant to section 1681f of this title.

Target argues that the allegations in the amended complaint place the background screening of the Plaintiff within this exclusion because Target was investigating a potential employee to see if she had violated state laws (i.e. theft).[9] See ECF No. 47 at 15-18. Target's expansive reading of this exclusion is

---

[9] Target also asserts that the background check was consistent with the company's written policies. ECF No. 47 at 19. However, this information outside the amended complaint is inappropriate for consideration of a motion to dismiss.

not supported by either the plain language of the statute, or the purpose of the FCRA.

"The . . . FCRA . . . was crafted to protect consumers from the transmission of inaccurate information about them, and to establish credit reporting practices that utilize accurate, relevant, and current information in a confidential and responsible manner." *Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995) (citations omitted) (*quoted by Cortez v. Trans Union, LLC*, 617 F.3d 688, 706 (3d Cir. 2010)). "These consumer oriented objectives support a liberal construction of the FCRA." *Id.*

Section 1681a(y) creates two limited exceptions for the use of consumer information in connection with employee investigations. Here, Target's background check was not performed *in connection with* an investigation into misconduct.[10] The Plaintiff alleged in the amended complaint that Target did not suspect her of any misconduct when it requested the background check; the background check was merely a matter of

---

[10] *Cf Mattiaccio v. DHA Grp.*, No. 12-1249, 2014 WL 717780, at *3 (D.D.C. Feb. 26, 2014) (whether employer gathered information "in connection with an investigation of . . . suspected misconduct" depended on whether the employer made the request after "receiv[ing] information indicating that [the] Plaintiff had previously been convicted of perjury" or in retaliation for a complaint); *Russell v. Shelter Fin. Servs.*, 604 F. Supp. 201, 202-03 (W.D. Mo. 1984) (interpreting "in connection with" under another section of the statute).

routine. ECF No. 45 at ¶¶ 14, 33. Further Target was not running the check to be compliant with state or federal regulations. *Cf. Martin v. First Advantage Background Serv. Corp.*, 877 F.2d 754, 758-60 (D. Minn. 2012) (if Wells Fargo ran background checks to be compliant with the SAFE Act then the exclusion would apply; however, this was a question of fact inappropriate for a motion to dismiss).[11]

The FCRA prohibits using consumer information to make an adverse decision against an employee without giving the employee prior notice. 15 U.S.C. § 1681b(b)(3). This includes "evaluating a consumer for employment." See § 1681a(2)(h). However, under Target's interpretation, an employer would be permitted to run a background check on *any* prospective or current employee to determine if the employee had *ever* violated any state or federal law. *See* ECF No. 47 at 15-19. That

---

[11] Other parts of the FCRA also reflect Congress's concern that employees need to be protected from adverse decisions based on consumer reports. For example, § 1681k(a) "creates heightened standards for procedures used [by credit reporting agencies] to collect information for employment purposes." *Dalton v. Capital Assoc. Indus., Inc.*, 257 f.3D 409, 417 (4th Cir. 2001). "When a consumer reporting agency furnishes a report that contains matters of public record likely to have an adverse effect upon the consumer's ability to obtain employment, it is obligated to do one of two things: (1) notify the consumer contemporaneously with the transmission of the report to the user or (2) 'maintain strict procedures' designed to ensure the information is 'complete and up to date.'" *Smith v. HireRight Solutions, Inc.*, 711 F. Supp. 2d 426, 438 (E.D. Pa. 2010).

exception would destroy the rule.[12]  *See Duncan v. Walker*, 533 U.S. 167, 174 (2001) (courts should give effect to "every clause and word of a statute").

Target's interpretation of 15 U.S.C. 1681a(y) is not persuasive.  The Plaintiff alleged in the amended complaint that Target requested a background check that was a consumer report, and made her in-eligible for hire based on that report without giving her prior notice.  She further alleged that knowing that First Advantage gathered information subject to the FCRA, Target chose not to comply with the FCRA notification requirements.[13]  The Plaintiff's amended complaint states an FCRA claim against Target.

---

[12] Some Courts have found that background checks on employees are consumer reports.  *See Goode v. LexisNexis Risk & Info. Analytics Grp., Inc.*, 848 F. Supp. 2d 535, 537 (E.D. Pa. 2012); *Johnson v. ADP Screening and Selection Servs., Inc.*, 768 F. Supp. 2d 979, 983 (D. Minn. 2011).  Although neither court analyzed the exclusion under § 1681a(y), Target's position would negate the courts' conclusion that such checks are within the protections of the FCRA.

[13] In its motion to dismiss, Target argues that the Plaintiff failed to state a claim for "willful" violation of the FCRA because Target's interpretation was "objectively reasonable." ECF No. 47 at 29.  Because the amended complaint alleges that Target failed to notify the Plaintiff before the adverse action knowing that the background check was protected by the FCRA, she has stated a claim for a willful violation.  *See Safeco Ins. Co. of Am. V. Burr*, 551 U.S. 47, 71 (2007) (a "willful" violation under the FCRA is one committed knowingly or with reckless disregard).

Accordingly, the Court will deny Target's motion to dismiss the amended complaint.

III. Conclusion

For the reasons stated above, the Plaintiff's motion to confirm leave to amend will be granted; the motions to dismiss the original complaint for failure to state a claim and Target's motions to strike will be denied.

1/12/15
Date

_/s/ William D. Quarles, Jr._
William D. Quarles, Jr.
United States District Judge