IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

CHARMAINE FRECKLETON,                    *
on behalf of herself and others *
similarly situated,
                                         *

        Plaintiffs,
                                         *

            v.                              CIVIL NO.: WDQ-14-0807
                                         *

TARGET CORPORATION,
*et al.*,                                *

        Defendants.                      *

*   *   *   *   *   *   *   *   *   *   *   *   *

MEMORANDUM OPINION

Charmaine Freckleton (the "Plaintiff") sued Target
Corporation ("Target") and First Advantage LNS Screening
Solutions, Inc. ("First Advantage")[1] for violations of the Fair
Credit Reporting Act ("FCRA").[2]  Pending is First Advantage's
motion to dismiss the amended complaint.  No hearing is
necessary.  Local Rule 105.6 (D. Md. 2011).  For the following
reasons, the motion will be denied.

---

[1] The Plaintiff alternatively refers to First Advantage LNS
Screening Solutions, Inc. as "Screening Solutions" and "First
Advantage."

[2] 15 U.S.C. § 1681 *et seq*.

I.   Background[3]

A. Target's Relationship with First Advantage

First Advantage "is among the biggest of this nation's employment background screening companies."  ECF No. 45 at ¶ 14. First Advantage "enters into form contracts ("Agreement of Service") with its employer customers, whereby, for a price, [First Advantage] agrees to provide consumer reports for employment purposes within the meaning of section 1681b(b) of the FCRA."[4]  *Id.* at ¶ 15.

First Advantage's customers, through the Agreement of Service, "acknowledge and agree that the information it will provide in connection with a background check is regulated FCRA consumer report information."  *Id.*  The customers must also agree to "follow FCRA procedures and safeguards that apply to the use of consumer reports."  *Id.*  For each background check

---

[3] The facts are from the amended complaint. ECF No. 45.  On a motion to dismiss, the well-pled allegations in the complaint are accepted as true.  *Brockington v. Boykins*, 637 F.3d 503, 505 (4th Cir. 2011).  The Court will consider the pleadings, matters of public record, and documents attached to the motions that are integral to the complaint and whose authenticity is not disputed.  *See Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

[4] "In certain rare instances, [First Advantage] will provide certain information to its customers in connection with 'employee investigations' under FCRA section 1681a(y), but [the Plaintiff avers that] such information is not at issue with regard to the Plaintiff or Class members in this action."  ECF No. 45 at ¶ 14.

ordered, the client must "have disclosed in writing to the job
applicant its intent to procure a 'consumer report' as part of
the application and the applicant will have provided the
customer with a written consent to such procurement." *Id.* at ¶
17.

When a client requires a background check, it sends a
request to First Advantage. *Id.* at ¶ 19.  Using proprietary
software, First Advantage will gather information about the
prospective employee. *Id.* "For an additional fee, [First
Advantage] offers a 'scoring service' which, in addition to
providing a 'background report' about the applicant, will score
the applicant in accordance with an 'adjudication matrix'
negotiated between the two companies." *Id.* at ¶ 20.  The
adjudication matrix assigns the applicant one of three
classifications: in-eligible for hire, eligible, or
"'decisional' (meaning that the customer needs to decide
itself." *Id.*

Target was one of First Advantage's "employer customers."
*Id.* at ¶ 16.  In addition to using First Advantage's background
checks, Target also contracted to use the scoring service, and
specified the factors that would make a candidate "in-eligible
for hire" when adjudicated. *Id.* at ¶ 20-23.  "Target has used
this background screening service by [First Advantage] as a way

3

to manage its vast pool of job applicants, filtering out those applicants scored by [First Advantage] as 'In-Eligible for Hire.'"  *Id.* at ¶ 23.

"As part of its agreement with Target, one of the databases [First Advantage] used to adjudicate Target job applicants . . . was its proprietary database known [] as 'Esteem.'"  *Id.* at ¶ 25.  "The data maintained in the Esteem database consisted primarily of purported admissions of theft procured by a former employer and contributed to the Esteem system.  This data is separate from criminal records information, which tends to be contained in separate databases . . . ."[5]  *Id.* at ¶ 26.  Target specified a "screening protocol" for prospective employees that "included, after a drug test, a Social Security number validation; then, at the next stage, an Esteem search; and then, if no Esteem match[es] were found, searches of [First Advantage's] National Criminal Record File and its 'OFAC' database."  *Id.* at ¶¶ 28-29.

---

[5] "Esteem was a membership program previously offered to [First Advantage's] customers in the retail industry.  Under this program, [First Advantage] would receive contributed employee 'admission statements' from one member, link those statements to the identifying information (name, address, social security number) for the employee in its massive data system, and then, in the event that same individual were to be the subject of a future background inquiry from a different employer member of Esteem, would report an Esteem 'match' to the inquiring employer."  ECF No. 45 at ¶ 27.

B. The Plaintiff's Contacts with the Defendants

In early 2012, the Plaintiff applied for a job at Target. ECF No. 45 at ¶ 31.  During the application process, "Target required [the] Plaintiff to consent to the procurement by Target of 'consumer reports' about her."  Id.  "In the consent documents that Target made [the] Plaintiff sign, Target asserted that it would be obtaining an FCRA consumer report."  Id.

On or about March 23, 2012, Target requested that First Advantage complete a background screening on the Plaintiff.[6]  Id. at ¶ 32.  "[A]fter validating [the] Plaintiff's Social Security number, [First Advantage] conducted a search of the consumer report about [the] Plaintiff in its Esteem database and discovered a match."  Id. at ¶ 34.  First Advantage adjudicated the Plaintiff in-eligible for hire, and reported to Target that she had been involved in a theft on December 2, 2011 while working at a CVS.  Id. at ¶¶ 34-35, 64.[7]

---

[6] "At the time that Target ordered and obtained the background screen about [the] Plaintiff from [First Advantage], [the] Plaintiff was not a confirmed employee of Target, and Target had not initiated any investigation of the Plaintiff.  Target had no suspicion of any misconduct by [the] Plaintiff relating to employment, and the background screen was not ordered in connection with an investigation."  ECF No. 45 at ¶ 33.

[7] The Plaintiff contends that "[t]his background report was inaccurate in that [the] Plaintiff never stole anything from CVS or from any other employer during her long career working in retail stores."  ECF No. 45 at ¶ 65.

According to the Plaintiff's recollection of the December
2, 2011 incident, the CVS loss prevention agent "directed [her]
to a back room" and "subjected her to a prolonged investigation
about an incident that occurred sometime the previous month
while [the] Plaintiff was performing her duties as a cashier."
ECF No. 45 at ¶ 65.  The Plaintiff did not remember the
incident, but told the loss prevention officer that if items
left the store that were not scanned and paid for, then it was
the result of a mistake.  *Id.*  The Plaintiff alleges that she
was not permitted to leave the back room until she admitted her
guilt, even though she had not stolen from the store.  *Id.*
Finally, "[t]he agent instructed her [on] what to write and she
wrote and signed the [admission] papers as she was instructed."
*Id.*  "In her mind, she had no choice but to cooperate."  *Id.*
CVS reported the incident and uploaded the admission statement
to the First Advantage's database.  *Id.*

When First Advantage completed the background check of the
Plaintiff, it informed Target that it had a "verified admission
statement" incident.[8]  ECF No. 1, Ex. A at 5.  However, the only
information used by First Advantage in the Plaintiff's screening

---

[8] The parties debate whether the admission statement, which First
Advantage attached to its motion, may be considered as part of a
motion to dismiss.  Because the content of the admission
statement does not alter the Court's analysis, it is unnecessary
for the Court to determine if the document is "integral" to the
complaint.  *See Philips*, 572 F.3d at 180.

was CVS's report and the admission statement contained in its system; First Advantage did not take any action to "verify" the statement.[9]  *See* ECF No. 45 at ¶¶ 19, 69.  The background check and screening process were completed on March 23, 2012, the day Target sent the initial request to First Advantage.  *Id*. at ¶ 42.

"Several days after [First Advantage] transmitted the Background Report [] to Target . . . , [it] provided [the] Plaintiff with a copy of the same background screen report [First Advantage] had earlier furnished to Target, accompanied by a written standardized notice, representing that the report *might* have an adverse effect on her application for employment and a form notice explaining, *inter alia*, her right under the FCRA to dispute the accuracy of the report."  *Id*. at ¶ 39.

C. Procedural History

On March 17, 2014, the Plaintiff sued Target on behalf of herself and similarly situated others, alleging that Target had violated 15 U.S.C. § 1681b(b)(3).  ECF No. 1.  The Plaintiff

_____

[9] The Plaintiff alleges that the "verification" "consisted of little more than the clerical task of (i) confirming the existence of a VAS in the database that contained a signature appearing to be that of the individual and (ii) confirming reference in the [admission statement] to the specific dollar amount of the reported theft."  ECF No. 45 at ¶ 69.  In its motion to dismiss, First Advantage states that it "verified" the incident "by referring to [the] [P]laintiff's signed statement admitting" to the conduct reported by CVS.  ECF No. 60-1 at 7.

also asserted an individual claim against First Advantage for violating 15 U.S.C. § 1681e(b).  *Id.*  On June 20, 2014, the Plaintiff filed an amended complaint.  ECF No. 45.  On July 2, 2014, Target moved to strike the amended complaint, or, alternatively, to dismiss the amended complaint for failure to state a claim.  ECF No. 47.  In denying Target's motion, the Court ruled that the First Advantage report was a "consumer report" covered by the FCRA.  ECF No. 57.

On January 25, 2015, First Advantage moved to dismiss the amended complaint for failure to state a claim.  ECF No. 60.  On February 12, 2015, the Plaintiff opposed the motion.  ECF No. 63.  On March 3, 2015, First Advantage replied.  ECF No. 64.

II.  Analysis

  A. Legal Standard

Under Fed. R. Civ. P. 12(b)(6), an action may be dismissed for failure to state a claim upon which relief may be granted. Rule 12(b)(6) tests the legal sufficiency of a complaint, but does not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."  *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).

The Court bears in mind that Rule 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief."  *Migdal v. Rowe Price-Fleming Int'l*

*Inc.*, 248 F.3d 321, 325-26 (4th Cir. 2001). Although Rule 8's notice-pleading requirements are "not onerous," the plaintiff must allege facts that support each element of the claim advanced. *Bass v. E.I. Dupont de Nemours & Co.*, 324 F.3d 761, 764-65 (4th Cir. 2003). These facts must be sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This requires that the plaintiff do more than "plead[] facts that are 'merely consistent with a defendant's liability'"; the facts pled must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Twombly*, 550 U.S. at 557). The complaint must not only allege but also "show" that the plaintiff is entitled to relief. *Id.* at 679 (internal quotation marks omitted). "Whe[n] the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* (internal quotation marks and alteration omitted).

   B. First Advantage's Motion to Dismiss the Amended Complaint

      The Plaintiff alleges that First Advantage's report of the December 2, 2011 "theft" incident violated § 1681e(b) of the FCRA. ECF No. 45 at ¶ 63. 15 U.S.C. § 1681e(b) states that

9

"[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." Thus, to state a claim under this section, a plaintiff must show that (1) the consumer report contains inaccurate information, and (2) the reporting agency failed to follow reasonable procedures to assure maximum possible accuracy. *See Dalton v. Capital Assoc. Indus., Inc.*, 257 F.3d 409, 415 (4th Cir. 2001).

"The . . . FCRA . . . was crafted to protect consumers from the transmission of inaccurate information about them, and to establish credit reporting practices that utilize accurate, relevant, and current information in a confidential and responsible manner." *Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995) (citations omitted) (*quoted by Cortez v. Trans Union, LLC*, 617 F.3d 688, 706 (3d Cir. 2010)). "These consumer oriented objectives support a liberal construction of the FCRA." *Id.*

First Advantage argues that the claim against it should be dismissed because what it reported to Target was true--in her admission statement, the Plaintiff admitted that she helped an ex-CVS worker steal $100 worth of merchandise. *See* ECF No. 60-1 at 12. Further, First Advantage relied on CVS's representations

10

of what occurred, corroborated by the admission statement, and these actions are not unreasonable. *Id.* at 11.  The Plaintiff asserts that she never committed theft, the admission statement was the result of CVS's forceful tactics, and First Advantage should have investigated before reporting the event to Target. ECF No. 63-1 at 9-16.

The Fourth Circuit has held that a consumer report is inaccurate "when it is 'patently incorrect' or when it is 'misleading in such a way and to such an extent that it can be expected to [have an] adverse[]' effect." *Dalton*, 257 F.3d at 415 (quoting *Sepulvado v. CSC Credit Servs.*, 158 F.3d 890, 895 (5th Cir. 1998)).  "[C]ourts have not read this term narrowly, and even a consumer report that contains technically complete information may be deemed 'inaccurate' if the statement is presented in such a way that it creates a misleading impression." *Jianqing Wu v. Trans Union*, No. AW-03-1290, 2006 WL 4729755, at *4 (D. Md. May 2, 2006); *see e.g.*, Pinner v. Schmidt, 805 F.2d 1258, 1262-63 (5th Cir. 1986 (notation of "litigation pending" on a consumer report was inaccurate because it implied that the plaintiff was being sued by a creditor, when, in fact, the plaintiff was the one who brought the suit).

First Advantage argues that its report to Target was accurate because the Plaintiff's admission statement admitted the theft, and First Advantage relied on the admission statement. ECF No. 60-1 at 12. First Advantage is correct that the Plaintiff cannot collaterally attack the accuracy of the consumer report by arguing that the admission statement was obtained under duress, and was forced on her by CVS--facts which she never alleges First Advantage knew. *See Jianqing Wu*, 2006 WL 4729755, at *4. Thus, had First Advantage only reported to Target that the Plaintiff had signed an admission statement admitting a theft at CVS, the Plaintiff would not have a claim under § 1681e(b).[10]

The report to Target, however, did not simply contain the information from the admission statement. Instead, First Advantage stated that it had a *verified* admission statement. To "verify" a fact is (1) "to prove [it] to be true by demonstration, evidence, or testimony; to confirm of substantiate" or (2) "to test or check the accuracy or

---

[10] 15 U.S.C. § 1681i permits a plaintiff to dispute information that may have been "accurate" under 1681e(b) by requiring the reporting agency to reinvestigate the information. The Plaintiff, however, did not notify First Advantage that she was disputing its report to initiate such an investigation, and has not filed suit under this section of the FCRA. Further, the Plaintiff did not pursue a claim against CVS as the "furnisher" of inaccurate information. *See Davis v. Equifax Info. Servs.*, 346 F. Supp. 2d. 1164, 1168, 1170-76 (N.D. Ala. 2004).

correctness of [the fact], as by investigation . . . ."
"Verify," *Webster's New World Dictionary*, at 1482 (3d ed. 1988);
*see also Davis v. Equifax Info. Servs.*, 346 F. Supp. 2d. 1164,
1168 (N.D. Ala. 2004) (detailing how Equifax "verified" a credit
report by investigating and checking the accuracy of the
claims).  Because First Advantage depended on the report by CVS
and the admission statement also provided by CVS, and never
sought any other information, conducted interviews, or
substantiated CVS's claim, a reasonable jury could find that
including "verified" in the consumer report was inaccurate
within the meaning of the FCRA.  *See Saunders v. Branch Banking
and Trust Co. of Va.*, 526 F.3d 142, 148 (4th Cir. 2008).

First Advantage next argues, that even if the report is
inaccurate, the Plaintiff cannot show that First Advantage
failed to follow reasonable procedures.  ECF No. 60-1 at 10-12.
"[T]he 'reasonable procedures' provision of the FCRA strikes a
balance between the rights of citizens to have their credit
information recorded accurately and the need for efficiency
among consumer reporting agencies."  *See Jianqing Wu*, 2006 WL
4729755, at *7.  On this basis, courts have routinely rejected
the arguments that the Plaintiff makes here--that First
Advantage should have conducted an independent investigation
before reporting to Target, and sought the Plaintiff's "side of

13

the story."[11]   "Absent some prior indication that the information
is inaccurate, it is reasonable and cost efficient to report
information without independent verification."  *Henson v. CSC
Credit Servs.*, 29 F.3d 280, 285 (7th Cir. 1994).

In this case, the Plaintiff has alleged that First
Advantage did more than merely rely on CVS's version of events
because it was First Advantage, and not CVS, that represented
that the admission was "verified."  Although the FCRA does not
mandate that a reporting agency conduct an independent
investigation prior to a complaint under 15 U.S.C. 1681i, if the
agency *implies* that it had conducted an investigation, then a
reasonable jury could conclude that relying on the account of a
single source was unreasonable.  *See Dalton*, 257 F.3d at 416-17
(a jury could conclude that the agency was unreasonable for
relying on the opinion of a court clerk).  Further, "whether the
agency failed to follow 'reasonable procedures' will be a 'jury
question[ ] in the overwhelming majority of cases.'"  *Id.*

---

[11] *See, e.g.*, *Sarver v. Experian Info. Solutions*, 390 F.3d 969,
971-72 (7th Cir. 2004) (the FCRA "does not hold a reporting
agency responsible where an item of information, received from a
source that it reasonably believes is reputable, turns out to be
inaccurate unless the agency receives notice of systemic
problems with its procedures.").  In the amended complaint, the
Plaintiff appears to allege that First Advantage was aware of
systemic problems with the proprietary database; however, the
Court will not address these allegations now because they are
unnecessary to resolve this motion.

14

(quoting *Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995)).

Accordingly, the Court will deny First Advantage's motion to dismiss the amended complaint.

III. Conclusion

For the reasons stated above, the motions to dismiss will be denied.

_____
Date     6/23/15

_____
William D. Quarles, Jr.
United States District Judge

15